OPINION *Page 2 
{¶ 1} In Stark County App. No. 2007CA00312, Appellant Josette Miller ("Mother") appeals the October 5, 2007 Judgment Entry, and Findings of Fact and Conclusions of Law entered by Stark County Court of Common Pleas Family Court Division, which terminated all of her parental rights, responsibilities and privileges with respect to her seven minor children, and granted permanent custody of the children to Appellee Stark County Department of Job and Family Services ("the Department"). In Stark App. 2007CA00311, Appellant Michael Stringfield ("Father") appeals the same with respect to the trial court's order relative to his minor daughter, Felicia Miller.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Mother is the biological mother of Trisha Krstinovoski (DOB 7/21/92); Felicia Miller (DOB 10/20/94); Courtney Miller (DOB 2/23/98); Damien Miller (DOB 1/17/99); Cody Miller (DOB 4/30/00); Skyann Miller (DOB 3/30/02); and Jordan Brickle (DOB 2/3/04). Father is the biological father of Felicia Miller.[1] The Department began working with the family on a voluntary basis on October 14, 2004. The Department's initial concerns centered around substance abuse as well as physical abuse of the children by Larry Brickle, father of Jordan, and alleged father of Courtney, Damien, Cody and Skyann. At the start of the Department's involvement, Mother tested positive for cocaine, and Brickle tested positive for marijuana. The Department requested Mother receive an assessment at Quest, and submit to random urine screens. Mother completed her evaluation at Quest, but the agency recommended no further treatment as Mother's second urine drop was negative. *Page 3 
 {¶ 3} On May 13, 2005, the Department learned Mother had been arrested for domestic violence against Brickle. Mother was then in the Stark County Jail, pending a pretrial scheduled for May 18, 2005. The Department learned of this incident after officers with the Alliance Police Department discovered Trisha, the oldest, walking around the streets. The officers subsequently took Trisha to school. The girl reported Brickle had left her alone with the other children after Mother was arrested. That morning, Trisha woke the other children, assisted them in getting dressed, and sent the school-age children to school. Trisha walked the other children to an aunt's house. She advised department workers she was the primary caretaker of her younger siblings as Mother was never home or was sleeping when she was home. The children were at the family's residence during the physical altercation between Mother and Brickle, and reported ongoing domestic violence between the two. The children further disclosed Brickle hits them in the face, pulls their hair, and pulls on their ears.
 {¶ 4} After being brought to school, Trisha revealed she was suicidal, and had several cut markings on her arms. The girl admitted to cutting herself with a hunting knife and a razor. Trisha was transported to Akron Children's Hospital, and admitted to the psychiatric unit for treatment. The other children all have special needs. Jordan has had open heart surgery. Skyann is deaf. Damien, Cody and Courtney are in special needs classes, and have been retained a year in school. Although Felicia was to be evaluated for ADHD, Mother never followed through with the appointment. Further, Trisha and Felicia had been sexually abused by a cousin, which the Department had substantiated. Mother never followed through with the recommended *Page 4 
counseling for the girls. All of the school age children had missed excessive amounts of school.
 {¶ 5} Following a shelter care hearing, the trial court placed the children in the temporary custody of the Department. The trial court adjudicated the children dependent after Mother and Father entered admissions. The trial court scheduled a dispositional review hearing for November 10, 2005. At the dispositional review hearing, the trial court found Mother had completed her psychological evaluation and Quest assessment. She was currently in counseling through Northeastern Ohio Behavioral Heath and attending Goodwill Parenting classes. Although Father was encouraged to visit with Felicia, he had not yet done so. The trial court also approved and adopted the case plans, which identified services for Mother and Father, individually, designed to effectuate reunification of the children with their parents.
 {¶ 6} On February 22, 2007, the Department filed a motion for permanent custody of the children. The trial court conducted a hearing on the motion on September 27, 2007.
 {¶ 7} At the hearing Vicki Mitchell, an ongoing family service worker with the Department, testified she had been involved with the family since the initial removal of the children from the home in May, 2005. Mitchell was also involved for eight months prior to the removal, working with the family on a voluntary basis.
 {¶ 8} With respect to Father, Mitchell stated his case plan required him to complete a psychological evaluation and follow all recommendations; complete a substance abuse assessment; and complete Goodwill Parenting classes. Although Father underwent an initial psychological evaluation, he did not follow through with the *Page 5 
recommendations which were subsequently incorporated into his case plan. Those recommendations included obtaining mental health services to address his bipolar disorder, maintaining stable housing and employment, becoming involved in Felicia's therapy as recommended by her therapist, and participating in a parenting class. Father did not undergo a substance abuse assessment, only attended a couple of therapy sessions, and did not attend any parenting classes. Mitchell noted Father was required to obtain mental health services in order to have therapeutic visits with Felicia. Because he failed to do such, Father had gone for a period in excess of 90 days without visitation with Felicia.
 {¶ 9} With respect to Mother, Mitchell stated her initial case plan included a psychological evaluation, a substance abuse evaluation, urine screens, parenting classes at Goodwill, and individual therapy as deemed necessary. Mitchell stated Mother complied with these requirements. Although Mother was working at the time of the permanent custody hearing, she had not maintained stable employment during the course of the proceedings. The Department began joint therapy for Mother and the children with the children's therapist, Dr. Hornbeck. Mother's therapist, Sarah Book, Dr. Hornbeck and Mitchell observed visitations between Mother and the children, and, although they had concerns, they agreed in-home visitation should begin in an effort to facilitate reunification. Weekly in-home visitations began, and after three sessions, the children's behavior began to worsen to such a degree their therapist recommended the in-home visitation be terminated. The concerning behaviors included self masturbation to the point of causing open sores; stealing; temper tantrums; aggression to the point of physical fighting; and emotional breakdowns. The children disclosed they were afraid to *Page 6 
be in Mother's home as they feared Mother would allow Brickle back into the house and again fail to protect them from his abuse. When Mitchell explained the situation to Mother and advised her visitation would return to therapeutic and supervised settings, Mother believed her finding a different residence would alleviate the children's fears. As a result, Mother left her housing, and was homeless for a period of six to nine months. Mother lived at a homeless shelter for a time, and was currently residing with her niece in Stark Metropolitan Housing where she is not permitted.
 {¶ 10} Continuing her testimony about Mother's visits with the children, Mitchell explained Mother had a difficult time managing all of the children. In fact, Mother had a very difficult time just meeting the basic needs of the children. Mitchell described the special needs of the children and the services they were currently receiving. The children suffered not only from psychological and emotional problems, but also cognitive delays. The children were currently doing extremely well, academically and behaviorally. Department workers tried to structure visits in such a way Mother would help the children with their homework, give them a meal, and engage in an activity with them. Mother was unable to do this. Typically, Trisha and Felicia did most of the care giving for the younger children as Mother had a difficult time keeping all of them engaged in any kind of activity.
 {¶ 11} Although Mother completed the Goodwill Parenting program, she only received a certificate of attendance. Since completing the program in December, 2005, some 28 months earlier, the Department had provided Mother with intensive in-home services as well as instruction and intervention during visits. Mother failed to implement the strategies she was being taught. Although Mother had regular therapy for *Page 7 
approximately one year, Mother had not been able to gain insight into the problems which lead to the removal of the children. As such, her counselor did not believe additional therapy would be beneficial. Mitchell acknowledged there were programs which would provide Mother with in-home services, however, all of the therapists involved in the matter concluded, despite two years of services, the family was not to a point where the therapists would or could recommend additional in-home services.
 {¶ 12} Mitchell also testified during the best interest portion of the hearing. She repeated there are seven children subject to the motion. Trisha, the oldest, was currently placed with her maternal grandmother.[2] Felicia as well as the youngest five children were in foster-to-adopt homes. Felicia, Courtney, Damien and Cody were placed together throughout the course of the case.[3] Skyann and Jordan were in the same home up until approximately two months prior to the hearing. Skyann was moved into another foster home which was better able to meet her special needs. Mitchell stated the children were doing extremely well in their respective placements. She recalled when the children first arrived in their foster placements, they all suffered severe behavior and psychological problems, but the foster parents have stood by them for the last 28 months, and as a result, the children had made tremendous progress. Mitchell detailed the services the children were currently receiving. The children were all very settled and bonded in their placements. The older children told Mitchell they would like to be able to visit Mother, but they did not believe Mother could take care of *Page 8 
them and keep them safe. They were afraid to return to Mother's home. Mitchell did not see any barriers to the children being adopted. She concluded it would be in the children's best interests to grant permanent custody to the Department in order for adoption to be facilitated.
 {¶ 13} Following the hearing, the trial court issued Findings of Fact and Conclusions of Law on October 5, 2007, finding the children could not or should not be placed with any of their parents and it would be in the children's best interest to grant permanent custody to the Department. Via Judgment Entry filed the same day, the trial court terminated the parental rights, privileges and responsibilities of all of the parents, and granted permanent custody to the Department.
 {¶ 14} It is from the October 5, 2007 Judgment Entry, and Findings of Fact and Conclusions of Law, Mother appeals, raising the following assignments of error:
 {¶ 15} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY RULING THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO SCDJFS."
 {¶ 17} Father appeals the same, raising the following assignments of error:
 {¶ 18} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. *Page 9 
 {¶ 19} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 20} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).
 Mother I, II; Father I, II {¶ 21} Because Mother and Father's assignments of error require similar analysis, we shall address said assignments of error together. In their first assignments of error, Mother and Father maintain the trial court's finding the children cannot or should not be placed with them was against the manifest weight of the evidence. In their second assignments of error, Mother and Father assert the trial court's finding it would be in the best interest of the children to grant permanent custody to the Department was against the manifest weight and sufficiency of the evidence.
 {¶ 22} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 23} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court *Page 10 
schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 25} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. *Page 11 
 {¶ 26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 27} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 28} Both Mother and Father argue they each complied with their individual case plans; therefore, the Department did not prove either should not have custody.
 {¶ 29} As set forth in the Statement of the Facts and Case, supra, Vicki Mitchell, the ongoing family service worker, testified Mother did, in fact, comply with the requirements of her case plan. However, after over two years of services, Mother had not gained any insight into the problems which lead to the initial removal of the children. Further, Mother was unable to handle having all seven children during visits. She consistently needed guidance and intervention. The Department was forced to terminate in-home visits after three weeks as the children's behaviors regressed so intensely. Mother also depended on Trisha and Felicia to parent the younger siblings. *Page 12 
 {¶ 30} With respect to Father, Mitchell testified Father had not seen Felicia since she was two years old, she was turning 13, as he had been incarcerated. Father appeared at all of the court hearings, except for one. At the initial hearing, Father was instructed to contact Felicia's therapist in regard to therapeutic visitation. Father did not contact the therapist until some nine months later. Felicia's therapist would not permit visits — even in a therapeutic setting — until Father engaged in individual therapy to address his mental health and sex abuse issues. The therapist instructed Father to contact her again. Father never did so. Although Father complied with the initial case plan requirements, he did not follow through with the recommendations following his psychological and/or parenting assessments, which were subsequently incorporated into his case plan.
 {¶ 31} During the best interest portion of the hearing, Mitchell testified about each child and their individual problems and needs. Mitchell again remarked Mother was unable to meet the children's basic needs, let alone their special needs. Mother had not followed through with assessments and treatment for Skyann, who was deaf, and had had surgery while in the custody of the Department. Mother did not have Cody assessed and treated for ADHD, although advised to do so.
 {¶ 32} All of the children, except Trisha, are in foster-to-adopt homes. They are bonded with their foster families. They are receiving the necessary services and treatments for their individual problems. The children have made tremendous strides, both emotionally and academically.
 {¶ 33} With respect to the trial court's best interest finding as it relates to Father, Father complains he was unable to create a bond with Felicia because the Department *Page 13 
did not permit him to visit his daughter. Father fails to recognize his own actions resulted in his not being granted visitation.
 {¶ 34} Based upon the foregoing and the entire record in this matter, we find the trial court's finding the children could not or should not be placed with Mother and Father within a reasonable time as well as its finding it was in the best interest of the children to grant permanent custody to the Department is supported by clear and convincing evidence.
 {¶ 35} Mother's first and second assignments of error are overruled.
 {¶ 36} Father's first and second assignments of error are overruled.
 {¶ 37} The judgment of the Stark Country Court of Common Pleas, Family Court Division, is affirmed.
 Hoffman, P.J., Farmer, J., and Delaney, J., concur. *Page 14 
 JUDGMENT ENTRY Case No. 2007CA00311
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark Country Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to appellant.
 JUDGMENT ENTRY Case No. 2007CA00312
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark Country Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to appellant.
[1] The fathers of the other children are not parties to this appeal.
[2] Mother stipulated to the granting of legal custody of Trisha to the girl's maternal grandmother.
[3] For approximately three to four weeks at the commencement of the matter, Courtney was placed with her maternal grandmother and Trisha. *Page 1